OPINION *Page 2 
{¶ 1} Plaintiffs-Appellants, Gene and Judy Ross, appeal the decision of the Knox County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee, Ohio Fair Plan Underwriting Association.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} Appellants own and reside at their home located in Centerburg, Ohio. Since 1978, Appellants have experienced basement flooding two or three times. In August 2004, a severe rain storm struck Centerburg. The heavy rains caused a stream on a neighbor's property to overflow its banks and water accumulated on Appellants' property. While Appellants had an operational sump pump, the water from the flooded stream came into Appellants' basement. Appellants claimed the water came into the basement through a four-inch drain pipe that usually conducts water from below the basement floor to the stream. When the water rose in the stream, it went up through the four-inch drain pipe and emptied into the basement. During the storm, the electricity went out and the sump pump stopped operating. Appellants estimated three to four inches of water accumulated in their basement, causing damage to the wallboard, drywall, trim, and personal property.
 {¶ 3} At the time of the flooding, Appellants' home was insured under a homeowner's policy issued by Appellee, effective May 15, 2004. On August 24, 2004, Appellants submitted a claim seeking reimbursement for the water damage to their property. After an investigation of the claim, Appellee denied the claim on September 29, 2004. *Page 3 
 {¶ 4} Appellee denied the water damage claim based upon a water damage exclusion provision contained in the policy. The exclusion denies coverage for water damage resulting from the failure of the sump pump at the residence premises.
 {¶ 5} In November 2004, while undergoing repairs to the basement due to the water damage, Appellants discovered mold damage affecting the drywall, trim and other interior structural items in the basement. On November 4, 2004, Appellants submitted a claim to Appellee seeking reimbursement for the mold damage. Appellee investigated the claim and denied the claim on January 4, 2005.
 {¶ 6} Appellee denied the mold damage claim based upon the above-stated water damage exclusion and also upon policy terms regarding mold, fungus, and wet rot.
 {¶ 7} Appellants filed a complaint against Appellee, claiming breach of contract for the denial of the two claims and bad faith. Appellee filed a motion for summary judgment. On May 3, 2007, the trial court granted Appellee's motion for summary judgment. It is from this decision Appellants now appeal.
 {¶ 8} Appellants raise one Assignment of Error:
 {¶ 9} "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND FINDING NO GENUINE ISSUE OF MATERIAL FACT."
 Summary Judgment Standard {¶ 10} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. *Page 4 
 {¶ 11} Civ. R. 56(C) states, in pertinent part:
 {¶ 12} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 13} Pursuant to the above-stated rule, a trial court may not grant summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claim. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving *Page 5 
party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. Vahila v. Hall (1997), 77 Ohio St.3d 421,429 citing Dresher v. Burt (1966), 75 Ohio St.3d 280.
 {¶ 14} It is based upon this standard that we review Appellant's Assignment of Error.
 {¶ 15} Appellants claim the trial court erred in finding there were no genuine issues of material fact as to whether they were entitled to coverage for water and mold damage under their homeowner's insurance policy. We disagree.
 {¶ 16} The trial court's judgment entry did not state its reasoning for the granting of summary judgment in this matter. We will therefore look to the arguments contained in Appellee's motion for summary judgment.
 {¶ 17} In it's motion, Appellee argued that there were no genuine issues of material fact that the claims for water and mold damage submitted by Appellants were excluded from coverage under the terms of the homeowner's insurance policy.
 {¶ 18} "`It is well settled that the construction of written contracts, including contracts of insurance, is a matter of law.Alexander v. Buckeye Pipeline (Sic.) Co. (1978), 53 Ohio St.2d 241, at paragraph one of the syllabus; Leber v. Smith, 70 Ohio St.3d 548, 553,1994-Ohio-361 (citation omitted). Accordingly, interpretations of insurance contracts are likewise subject to a de novo standard of review. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm,73 Ohio St.3d 107, 108, 1995-Ohio-214. In so doing, "[c]ommon words * * * will be given their ordinary meaning unless manifest *Page 6 
absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument."Alexander, 53 Ohio St.2d 241, at paragraph two of the syllabus.'"Bunosky v. Metro. Property Cas. Ins. Co., 11th Dist. No. 2005-P-0073,2006-Ohio-2768, at ¶ 12.
 {¶ 19} "`[W]here the provisions of an insurance policy are clear and unambiguous courts may not indulge themselves in enlarging the contract by implication in order to embrace an object distinct from that contemplated by the parties, Stickel v. Excess Ins. Co. (1939),136 Ohio St. 49, paragraph one of the syllabus, nor read into the contract a meaning not placed there by an act of the parties, Motorists Ins. Co. v.Tomanski (1970), 27 Ohio St.2d 222, 226; Olmstead v. Lumbermens Mutl.Ins. Co. (1970), 22 Ohio St.2d 212, 216, nor make a new contract for the parties where their unequivocal acts demonstrate an intention to the contrary, Jackson v. Metropolitan Life Ins. Co. (1973),34 Ohio St.2d 138, 140; Fidelity Cas. Co. v. Hartzell Bros. Co. (1924),109 Ohio St. 566.'" Gomolka v. State Auto. Mutl. Ins. Co. (1982), 70 Ohio St.2d 166,168.
 {¶ 20} "`Where, however, it may reasonably be concluded that the language of a policy is ambiguous and may therefore be subject to different interpretations, a universally applied axiom of construction becomes appropriate to resolve the ambiguity. As stated in Butche v.Ohio Cas. Ins. Co. (1962), 174 Ohio St. 144, 146: "[P]olicies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretations, will be construed most favorably for the insured.'" Cooper Farms, Inc. v. Brown Brown ofOhio, Inc., Van Wert App. Nos. 15-06-02, 15-06-03, 2006-Ohio-5982, at ¶ 33-35. *Page 7 
 WATER DAMAGE CLAIM {¶ 21} Appellee first argues the water damage in Appellants' basement resulted from water that overwhelmed and backed up into the basement through the Appellants' sump pump which failed due to a power outage in the area. Under this scenario, Appellee argues Appellants' claim for water damage is excluded from coverage under the homeowner's insurance policy. The homeowner's policy specifically states as follows:
 {¶ 22} "SECTION I — EXCLUSIONS
 {¶ 23} "A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
 {¶ 24} "* * *
 {¶ 25} "3. Water Damage
 {¶ 26} "Water Damage means:
 {¶ 27} "a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
 {¶ 28} "b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or *Page 8 
 {¶ 29} "c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;
 {¶ 30} "caused by or resulting from human or animal forces or any act of nature.
 {¶ 31} "Direct loss by fire, explosion or theft resulting from water damage is covered.
 {¶ 32} "4. Power Failure
 {¶ 33} "Power failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residential premises", we will pay for the loss caused by that peril."
 {¶ 34} In an attempt to avoid the exclusion, Appellants contend a genuine issue of material fact exists regarding the proximate cause of the water damage. Specifically, they argue the water damage to the basement did not occur because of sump pump failure, but was caused instead by the backflow of water coming in from a four-inch drain to the neighbor's stream at a faster rate than the sump pump could remove the water. Appellants state that even if the power failure had not occurred and the sump pump had continued to operate, it could not keep up with the incoming flow of water.
 {¶ 35} Applying either Appellants' or Appellee's version of the proximate cause of the water damage to the clear and unambiguous terms of the water damage exclusion found in the homeowner's policy, we find that there are no genuine issues of material fact and the water damage claim is excluded from coverage. Even construing the facts *Page 9 
in favor of Appellants and assuming their argument that the water entered the basement through the four-inch drain as a result of the neighbor's flooded stream and not because of sump pump failure, we find the water damage would still be excluded from coverage under the water damage exclusion found in Secs. 3.a. and b. of the policy. The sections state respectively:
 {¶ 36} "a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
 {¶ 37} "b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; * * *"
 {¶ 38} Thus, the water damage claim falls within the water damage exclusion under either Appellee's or Appellants' factual interpretation of overflow from the sump pump, sump pump failure or back up from the storm drain. Summary judgment in favor of Appellee on this issue was proper.
 MOLD DAMAGE CLAIM {¶ 39} Appellee next argued in its motion for summary judgment that Appellants' mold damage claim was not a "covered loss" under the policy, and that the claim was also expressly excluded from coverage under the policy.
 {¶ 40} The policy states as follows:
 {¶ 41} "SECTION 1 — PERILS INSURED AGAINST
 {¶ 42} "A. Coverage A — Dwelling and Coverage B — OtherStructures *Page 10 
 {¶ 43} "1. We insure against risk of direct physical loss to property described in Coverages A and B.
 {¶ 44} "2. We do not insure, however, for loss:
 {¶ 45} "a. Excluded under Section I — Exclusions;
 {¶ 46} "* * *
 {¶ 47} "c. Caused by:
 {¶ 48} "* * *
 {¶ 49} "(5) Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:
 {¶ 50} "(a) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or
 {¶ 51} "(b) A storm drain, or water, steam or sewer pipes, off the "residence premises".
 {¶ 52} "For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout, or similar fixtures or equipment; or
 {¶ 53} "* * *" *Page 11 
 {¶ 54} Appellants argue they are entitled to coverage under Sec. 5(b) of the policy because the hidden mold damage resulted from the accidental discharge or overflow of water from within a storm drain, water or sewer pipe off the residence premises. Under Appellants' theory of causation, the water entered the basement from the back up of the four-inch storm drain located under the basement floor. Appellants argue that the storm drain is "off the residence premises" because the storm drain goes into the neighbor's stream, which is off the residence premises. (Gene Ross depo., p 52).
 {¶ 55} Appellee agrees the mold damage was hidden, but propounds its own argument of causation. It claims the mold damage was a result of the water damage that occurred because of the failure of the sump pump.
 {¶ 56} Again construing the facts in favor of the non-moving party, we find that the mold damage claim is also excluded under the terms of the homeowner's policy. We find as such based upon the definition of "residence premises" found within the insurance policy. It states,
 {¶ 57} "`Residence premises' means:
 {¶ 58} "a. The one family dwelling where you reside;
 {¶ 59} "b. The two, three or four family dwelling where you reside in at least on the family units; or
 {¶ 60} "c. That part of any other building where you reside;
 {¶ 61} "and which is shown as the `residence premises' in the Declarations. *Page 12 
 {¶ 62} "`Residence premises' also includes other structures and grounds at that location."
 {¶ 63} The terminology "off the residence premises" is not defined by the homeowner's policy. When a word is undefined, we examine the common meaning of the word and Ohio case law involving the language at issue.Shear v. West Am. Ins. Co. (1984), 11 Ohio St.3d 162, 165,464 N.E.2d 545. This Court has previously held that "the mere absence of definition in insurance contract does not make meaning of term ambiguous."Durant v. Buckeye Union Ins. Co., Holmes County App. No. 05CA006,2006-Ohio-2866. "Common words appearing in a written instrument will be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v. Buckeye Pipe LineCo. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146.
 {¶ 64} We find that under the definition of "residence premises," the four-inch storm drain located under the basement floor of the residence that drains into the neighbor's stream is not "off the residence premises." Construing the above facts in favor of Appellants that the back up of the storm drain located under the basement floor caused the water damage and resulting mold damage, Appellants are not entitled to coverage under the mold damage exclusion found in the homeowner's insurance policy. The policy clearly and unambiguously only provides coverage for mold damage that results from accidental discharge or overflow of water from within a storm drain off the residence premises. Such is not the case here, as the overflow of water into the basement occurred from a drain on the residence premise. *Page 13 
 {¶ 65} We find it was proper to grant summary judgment in favor of Appellee's on the issue of mold damage. Based on the foregoing, Appellants' sole Assignment of Error is overruled.
 {¶ 66} Accordingly, the judgment of the Knox County Court of Common Pleas is affirmed.
 Delaney, J. Gwin, P.J. and Farmer, J. concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Knox County Court of Common Pleas is affirmed. Costs assessed to Appellants. *Page 1